UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GONZALO ALEXIS HERREDIA
GURROLA,

                    Petitioner,

        v.

ORESTES CRUZ, et al.,

                    Respondents.

Case No.  1:25-cv-02078-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO
GRANT PETITION FOR WRIT OF HABEAS
CORPUS IN PART, AND DENY MOTION
FOR PRELIMINARY INJUNCTION AS
MOOT[1]

(Docs. 1, 4)

FIVE-DAY OBJECTION PERIOD

Petitioner Gonzalo Alexis Herredia Gurrola, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the Golden State Annex Detention Facility in McFarland, California, initiated this action by filing, with counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on December 31, 2025.  (Doc. 1, "Petition").  On January 2, 2026, Petitioner filed a motion for temporary restraining order.  (Doc. 4).  On January 6, 2026, the assigned district judge denied Petitioner's motion for a temporary restraining order, converted to motion to one seeking preliminary injunction, and referred the matter to the undersigned magistrate judge.  (Doc. 9).

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

The Petition raises the following claim for relief: "By denying Petitioner a bond hearing under § 1226(a) and asserting that he is subject to mandatory detention under § 1225(b)(2), Respondents violate Petitioner's statutory rights under the INA and the Court's judgment in *Maldonado Bautista*." (Doc. 1 at 14); *see Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873-SSS-BFM (C.D. Cal.). As relief, *inter alia*, Petitioner asks the Court to issue a writ of habeas corpus requiring that Respondents release him, or in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) with seven (7) calendar days. (*Id.*).

In response, Respondent argues the Court should dismiss the Petitioner's habeas petition and deny injunctive relief because (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) while his removal proceedings are pending because he "committed a serious crime while in the United States," and he is not a member of the *Maldonado Bautista* bond eligible class because it does not include individuals detained under § 1226(c); and (2) Petitioner failed to exhaust administrative remedies. (Doc. 12 at 2-4). In reply, Petitioner argues (1) he is not detained under § 1226(c), as evidenced by the Immigration Judge's (IJ) denial of his bond request for lack of jurisdiction because Petitioner is an "applicant for admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2); and (2) exhaustion of administrative remedies is not required in this case. (Doc. 13; *see* also Doc. 12-1 at 14, 17 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)).

Significant to the consideration of the Petition is Petitioner's status as a Mexican citizen who entered the country without inspection and resided in the United States for more than 20 years before being apprehended and placed in standard removal proceedings under § 1229a. The undersigned recommends the district court grant the Petition in part for the reasons set forth below.

## I.    BACKGROUND

It is uncontested that Petitioner is a citizen of Mexico who entered the United States without inspection on or around August 2000. (Doc. 1 at 11). He has resided continuously in the United States for over 20 years, and was living in Delano, California with his spouse, who is a naturalized United States citizen, and his three United State citizen children, before he was taken

2

into custody.  (*Id*. at 11-12).  Petitioner has a criminal history both as a juvenile and adult, including, *inter alia*, arrests for First Degree Burglary in 2012 and 2016, pleading no contest for obstructing a police officer in violation of California Penal Code § 148(A)(1) in 2015, pleading no contest to appropriating lost property in violation of Cal. Penal Code § 485 in 2015, pleading no contest for driving without a license under California Vehicle Code § 12500(A) and failure to appear in violation of Cal. Penal Code § 853.7, and pleading no contest to accessory after the fact in violation of Cal. Penal Code § 32 in 2016 for which he was sentenced to 143 days in jail, of which he served 71 days with credit for good behavior.  (*Id*.; Doc. 1-2 at 4-6).

On July 17, 2025, Petitioner was arrested by ICE at a scheduled interview related to his I-485 Adjustment of Status application.  (Doc. 1 at 11, Doc. 12-1 at 10).  On the same date, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging Petitioner as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and ordered Petitioner to appear before an IJ.  (Doc. 12-1 at 5-7).  Petitioner requested a bond hearing, and on August 25, 2025, the IJ issued a decision denying Petitioner's request for a change in custody status for lack of jurisdiction and "independent[ly] conclude[d] that [Petitioner] is a danger to the community."  (*Id*. at 14).  On December 29, 2025, the IJ issued an additional decision that declined to reach any argument as to materially changed circumstances vis a vis the previous IJ's danger assessment, and found the court continued to lack jurisdiction over Respondent's request for custody redetermination based on the *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (*Id*. at 17).

Petitioner is currently detained in ICE custody at the Golden State Annex Detention Center in McFarland, California.  (Doc. 1 at 4; Doc. 12-1 at 2).

## II.   APPLICABLE LAW AND ANALYSIS

The Court recommends advancing the merits determination and consolidating it with the resolution of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2); *see also Dzhabrailov v. Decker*, 2020 WL 2731966, at *4 (S.D.N.Y.

3

May 26, 2020) (considering preliminary injunction and merits of petition simultaneously).

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### B.  Exhaustion

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus."  *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."  *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).  Because exhaustion is not required by statute, it is not jurisdictional.  *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995) (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987)).  If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."  *Id*.  "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted).  However, the Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile.  *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved

for instances in which no other judicial remedy is available.").

Respondents note Petitioner has received two administrative bond determinations from an IJ and has not challenged those determinations; thus, Respondents argue Petitioner has received "the process that he is due – and should be required to press his claims administratively before seeking relief here." (Doc. 12 at 3-4).  Petitioner responds that the prudential exhaustion requirement should be waived because agency expertise is not necessary to resolve "the purely legal questions presented by 'Petitioner's' challenge to the government's policy"; relaxation of the requirement would not encourage deliberate bypass of the administrative scheme; and exhaustion would not afford the agency the opportunity to "correct its own mistakes."  (Doc. 13 at 6-7 (citing factors for analyzing waiver of prudential exhaustion outlined in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007)).

The Court joins the multitude of district courts to consider this issue recently in the context of habeas petitions filed by immigrant detainees and finds "pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained." *Singh v. Andrews*, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025) (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)); *see also at Chavez v. Noem*, 2025 WL 2730228, at *3-4 (S.D. Cal. Sept. 24, 2025) (waiving exhaustion as futile because "the BIA has already applied its expertise in deciding and designating *Matter of Yajure Hurtado* as precedential.  It therefore seems clear that anyone deemed inadmissible under § 1182(a)(6)(A)(i) (that is, '[a]n alien present in the United States without being admitted or paroled') will be subjected to mandatory detention without bond under § 1225(b)(2) upon BIA review.'); *Barco Mercado v. Francis*, 2025 WL 3295903, at *12 (S.D.N.Y. Nov. 26, 2025) ("To force Mr. Barco to request a bond hearing from an immigration judge – which would be denied under the BIA's recent decision and, even if it were held, would result in release being denied under that decision – and then appeal that denial to the same BIA that has prevented immigration judges from hearing bond requests in the first place, all before allowing Mr. Barco to seek judicial review of his arrest and redetention, would be 'Kafkaesque.'").  Accordingly, the Court exercises

its discretion to waive the prudential exhaustion requirement and will turn to the merits.

**C. Claim for Relief: Violation of the INA and Request for Relief Pursuant to**
*Maldonado Bautista*

As relevant here, the Court will briefly outline the relevant statutory and legal framework of detention authority under the INA.

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). Pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional bond hearing if he or she can demonstrate a material change in circumstances.  *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of aliens ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA

7

without inspection and were apprehended while present in the U.S.  By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while residing in the United States, as subject to Section 1226(a).").  However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."  *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

Here, Petitioner argues that "[b]y denying [him] a bond hearing under § 1226(a) and asserting that he is subject to mandatory detention under § 1225(b)(2), Respondents violate Petitioner's statutory rights under the INA and California Central District Court's judgment in *Maldonado Bautista*."  (Doc. 1 at 14).  Respondent offers no response to Petitioner's argument regarding § 1225(b)(2); instead, Respondent contends that Petitioner is subject to mandatory

detention under 8 U.S.C. § 1226(c) as he "committed a serious crime" while in the United States. (Doc. 12 at 2-3). As discussed supra, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," thereby mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original). However, Respondent fails to offer any meaningful evidence, argument, or legal authority regarding the alleged category of criminal offense detention under § 1226(c) aside from the cursory statement that Petitioner "committed serious criminal offenses" while in the United States. *See, e.g.,* 8 U.S.C. § 1226(c)(1) (referencing having committed offenses covered in § 1182(a)(2), § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), (D), § 1227(a)(2)(A)(i), § 1182(a)(3)(B), 1227(a)(4)(B), and under the recently enacted Laken Riley Act, aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes). As argued by Petitioner, in addition to not identifying the "serious criminal offense" that allegedly triggered detention under § 1226(c), Respondent also made no argument as to whether the recently enacted Laken Riley Act can apply retroactively to Petitioner's burglary convictions, or whether a conviction handled in juvenile court, and convictions that are vacated, are recognized as a criminal conviction for immigration purposes.[2] (Doc. 13 at 2-4).

Moreover, and of utmost relevance to the Court's analysis here, irrespective of Respondent's perfunctory statement that Petitioner is held under § 1226(c), both IJ decisions denied Petitioner's request for change in custody status, at least in part, based on lack of jurisdiction over his request; and the December 29, 2025 decision specifically cited *Matter of Yajure Hurtado*, which, as discussed above, held that IJ's do not have authority to hear bond requests or grant bond to noncitizens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under §

---

[2] While the Court finds Respondents fail to provide evidence in support of their argument that Petitioner is detained pursuant to § 1226(c), Petitioners criminal history and the IJ's "independent conclusion" at the August 25, 2025 bond hearing that Petitioner is a danger to the community are concerning. Thus, as indicated below, the Court recommends granting the Petition only in part, and ordering Respondents to provide a bond hearing under § 1226(a) such that the IJ may properly consider Petitioner's dangerousness and flight risk on an individualized basis.

1225(b)(2)(A).  *See* 29 I&N Dec. 216 at *9.  Thus, the Court will proceed to consider Petitioner's claim that denying him a bond hearing because he is subject to mandatory detention under § 1225(b)(2) is a violation of the INA and the California Central District Court's judgment in *Maldonado Bautista*.  (Doc. 1 at 6-14).

As an initial matter, Petitioner claims to be member of the bond-eligible class certified in *Maldonado Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) because he does not have lawful status in the United States, has resided in the United States for more than 20 years and was not apprehended upon arrival, and he is not detained under § 1226(c), § 1225(b)(1), or § 1231.  (Doc. 1 at 3).  After previously granting partial summary judgment and declaring Respondents' policy of holding class members without the opportunity for release on bond is unlawful under the INA in *Maldonado Bautista v. Santacruz*, 2025 WL 3289861, the court there entered final judgment in favor of petitioners and declared that "the Bond Eligible Class members are detained under § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge."  *Maldonado Bautista v. Santacruz*, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) (also vacating the relevant DHS policy pursuant to the Administrative Procedure Act).[3]  Petitioner claims that despite the "binding" final judgment in *Maldonado Bautista*, Respondents continue to detain him without a bond hearing under § 1226(a), and because he is because he is detained in violation of *Maldonado Bautista*, the Court should order his immediate release or should order his release unless he is provided a bond hearing under 8 U.S.C. § 1226(a) within seven days.  (Doc. 1 at 2-4).

Respondents argue the ruling in *Maldonado Bautista* is inapplicable to Petitioner because he is detained under § 1226(c), and "even if he were a member of the class, the *Maldonado Bautista* court lacks jurisdiction over Petitioner" because petitions must be adjudicated in the

---

[3] The government has appealed the judgment to the Ninth Circuit, but the judgment has not been stayed pending appeal.  *See Maldonado Bautista v. U.S. Dep't of Homeland Security*, Case No. 25-7958 (9th Cir.).  In addition, the Central District of California recently entered an additional order vacating *Matter of Yajure Hurtado* as contrary to law under the Administrative Procedure Act, and ordering respondents to provide class wide notice as such. *Maldonado Bautista v. Santacruz*, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026).

district where the petitioner is detained." (Doc. 12 at 5, n.3).

Notwithstanding the *Maldonado Bautista* decisions, and in light of this court's concerns about the binding nature, or lack thereof, of the *Maldonado Bautista* directives in the context of Petitioner's request for relief in the form a petition for writ of habeas corpus, the Court finds it unnecessary to decide whether Petitioner is entitled to relief solely based on his purported membership in the *Maldonado Bautista* class. *See Justo S. v. Cruz*, 2026 WL 457120, at *1 (E.D. Cal. Feb. 18, 2026) (adopting findings and recommendations in part, and noting the court "declines to address whether Petitioner is entitled to relief in this habeas petition simply because he is a Maldonado Bautista class member."); *see also, e.g., Ramirez v. Holt*, 2026 WL 226964, at *7 (E.D. Ky. Jan. 28, 2026) (citing *Maldonado Bautista v. Santacruz*, 2025 WL 3713987, at *30 (C.D. Cal. Dec. 18, 2025) (finding *Maldonado Bautista* can have no more than persuasive authority, and noting the court acknowledged that "[t]o the extent Petitioners seek habeas relief for class members in immigration detention outside of this judicial district, the Court reiterates such an action would be *ultra vires*; there is no habeas jurisdiction to do so."). Consequently, the Court chooses to directly address Petitioner's allegation that mandatory detention of Petitioner, as a noncitizen who previously entered the country and has resided here prior to being apprehended and placed in removal proceedings under 8 U.S.C. § 1225(b)(2), instead of § 1226(a), is a violation of the INA. The Court agrees with Petitioner for the reasons discussed briefly below, as they have been exhaustively considered by district courts across the country.

This Court's analysis is primarily guided by principles of statutory interpretation. The plain language of the statute is the starting point for its interpretation. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). Fundamentally, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. United States Steel Corp.*, 571 U.S. 200, 227 (2014) (citation omitted). But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2105). Moreover, it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*,

11

534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Corley v. United States*, 556 U.S. 303, 314 (2009).  Relevant here, the Supreme Court recently stated that courts "must exercise independent judgment in determining the meaning of statutory provisions," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 412 (2024).

Courts considering the plain language of this statute have almost universally found that the phrase "seeking admission" necessarily entails some type of action taken to obtain entry.  *See, e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489-90 (S.D.N.Y. 2025) ("This understanding accords with the plain, ordinary meaning of the words 'seeking' and 'admission.' For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there."); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025); *but see Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *4 (5th Circ. Feb. 6, 2026) ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'").

The Court remains persuaded by this analysis.  Petitioner has resided in the United States for 20 years prior to his arrest and detention without seeking admission; thus, the mandatory detention provision of § 1225(b)(2)(A) does not apply to Petitioner regardless of whether he is properly defined as an "applicant for admission."  As noted by Petitioner, Respondents' proposed interpretation also disregards the relationship within the INA between § 1225 and § 1226.  (Doc.

1 at 8-11).  First, § 1225 governs "inspection" of "arriving aliens," while § 1226 focuses on the "apprehension and detention of aliens."  The interplay between these provisions was summarized by the Supreme Court in *Jennings* as follows: "[t]o implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. … In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."  *Jennings*, 583 U.S. at 286-89, *see also id*. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."); *Romero v. Hyde*, 2025 WL 2403827, at *12-13 (D. Mass. Aug. 19, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting the distinction between "persons inside the United States and persons outside the United States" "is consistent with the long history of our immigration laws and with the Constitution.")).  Thus, Petitioner is more aptly characterized as an alien "already in the country," albeit without legal status, and should therefore be detained under § 1226(a).

Second, as described above, the 2025 amendment to § 1226(c) under the Laken Riley Act, added subsection § 1226(c)(1)(E) to require mandatory detention for those inadmissible under §§ 1182(a)(6)(A) (aliens present in the United States without being admitted or paroled, like Petitioner), (6)(C), or (7) *and* charged with, arrested for, convicted of, or admitting to certain crimes. § 1226(c)(1)(E).  If, as argued by Respondents, all "applicants for admission," including those already present in the country and then deemed inadmissible, are already subject to mandatory detention under § 1225(b)(2)(A), it would have been unnecessary for Congress to pass an amendment requiring mandatory detention for those applicants who were also charged with certain crimes.  *See, e.g., Escobar Salgado*, 2025 WL 3205356, at *13.  "Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected." *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citing *Marx v. Gen. Revenue Corp*., 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation

13

would render superfluous another part of the same statutory scheme."); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Based on the foregoing, giving effect to every word in § 1225(b)(2)(A) in accordance with their ordinary meaning, and considered in context with § 1226 and the overall statutory scheme, Respondents' new statutory interpretation of § 1225(b)(2), and the application of § 1225(b)(2)(A) to Petitioner, is in violation of the INA. "Legislative history, congressional intent, and historical context is relevant to confirm textual analysis." *See Escobar Salgado*, 2025 WL 3205356, at *11 (citing *Biden v. Texas*, 597 U.S. 785, 804 (2022)); *see also Loper Bright*, 603 U.S. at 386 (2024) ("The longstanding practice of the government – like any other interpretive aid – can inform [a court's] determination of what the law is.") (internal quotations omitted). To the extent not discussed *supra*, in the interests of efficiency, the Court relies on the analysis of these factors by numerous district courts as further support that uninspected aliens residing long term in the United States without seeking admission, like Petitioner, are subject to detention under § 1226(a), and mandatory detention of those individuals under § 1225(b)(2)(A) as recently interpreted by Respondent, is unlawful. *See, e.g., id*. at *17-20; *Maldonado*, 795 F. Supp. 3d at 1150; *Salcedo Aceros*, 2025 WL 2637503, at *11-12; *Gomez v. Doe*, 2025 WL 3269886, at * (D. Ariz. Nov. 3, 2025) (collecting cases).

Finally, while not binding on this Court, it is noteworthy that courts considering this issue across the country, including in the Eastern District of California, have almost uniformly rejected Respondents' argument that all noncitizens who entered the United States without inspection and have lived in the United States for years or decades are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); instead, that category of noncitizen is subject to detention under § 1226(a). *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *Aquino v. LaRose*, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *8, n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Echevarria v. Bondi*,

14

2025 WL 2821282, at *7 (D. Ariz. Oct. 3, 2025) (collecting cases); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (§ 1225(b)(2)(A) applies to an alien who is physically present in the United Sates but not lawfully admitted, regardless of how long they have been physically present here."); *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

For all of these reasons, the Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A); rather, his detention is governed by the discretionary framework of § 1226(a).

Accordingly, it is hereby **RECOMMENDED:**

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) be GRANTED in part.

2. Petitioner's Motion for Preliminary Injunction (Doc. 4) be denied as moot.

It is **further RECOMMENDED**:

1. If the district court adopts these Findings and Recommendations, the district court direct that within seven (7) days of its Order, Respondents be directed to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a).

////

15

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the urgency of a grant of the Petition, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    February 20, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE